# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL NO. 3:09CV386-FDW-DSC

| | |
|---|---|
| TERRY L. HARGETT,<br>　　　　Plaintiff,<br><br>　　　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>　　　　Defendant. | )<br>)<br>)<br>)　**MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #5) and "Brief in Support ..." (document #6), both filed January 17, 2010; and the Defendant's "Motion for Summary Judgment" (document #7) and "Memorandum in Support of the Commissioner's Decision" (document #8), both filed February 11, 2010. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On June 26, 2006, Plaintiff filed an application for a period of disability and Social Security disability benefits ("DIB"), alleging she was unable to work as of June 5, 2006 due to osteoarthritis, bone spurs, right elbow problems, asthma, high blood pressure, allergies, fibromyalgia, acid reflux

and sleep apnea. (Tr. 140). Plaintiff's application was denied initially and on reconsideration, and a hearing was held on March 5, 2009. (Tr. 19-56). At the administrative hearing, Plaintiff amended her alleged onset date to April 17, 2006. (Tr. 10, 26).[1]

In a decision dated April 28, 2009, the ALJ denied Plaintiff's claim, finding that Plaintiff had not engaged in substantial gainful activity through April 17, 2006, the day she was laid off from her job as an office operations specialist. The ALJ also found that Plaintiff suffered osteoarthritis, bilateral rotator cuff impingement syndrome, residuals of carpal tunnel syndrome and residuals of carpometacarpal arthritis, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff's testimony concerning the severity of her impairments was not persuasive; that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform sedentary work,[3] which did not require more than occasional climbing, balancing, kneeling, crouching, crawling, and reaching; that this RFC was sufficient to permit Plaintiff to perform her past relevant work; and therefore that Plaintiff was not disabled.

---

[1] In her brief, Plaintiff claims that prior to the hearing, the ALJ offered to approve her application for benefits if she would amend her onset date to October 2007. See document #6 at 2. Plaintiff has failed to provide any corroboration for this allegation, which does not appear anywhere in the record, and accordingly, the Court has not considered it

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

By notice dated July 31, 2009, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on September 8, 2009. On appeal, Plaintiff assigns error to the ALJ's conclusion that Plaintiff was performing all material duties as an office operations specialist on the day she was laid off, as well as his evaluations of the opinion of Plaintiff's treating rheumatologist, Robert Kipnis, M.D., and the Plaintiff's daily activities. See Plaintiff's "Brief in Support ..." at 1 (document #6). The parties' cross dispositive motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled," as that term of art is defined for Social Security.[4] Substantial evidence supports the ALJ's ultimate conclusion that Plaintiff was not disabled because she retained the RFC to perform her past relevant work as a office operations specialist. With respect to Plaintiff's daily activities, during a mental status examination on August 24, 2006 (more than four months after her alleged onset date), Plaintiff told Dr. Robert H. Abramowitz that she was able to do laundry, dust, clean a bathroom, put things

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

away, cook/prepare dinner, garden, take care of the household finances, attend church regularly, and interact with her family and close friends. (Tr. 16, 277). Additionally, in a Third Party Function Report, Plaintiff's husband provided information that was essentially the same as what Plaintiff reported to Dr. Abramowitz. (Tr. 131-135, 277). Specifically, Mr. Hargett stated that while he helped Plaintiff to dress and bathe, she was able to prepare her own meals and do light cleaning. He also reported that she drove a car, paid her own bills, handled a savings account, used a check book, attended church on Sunday, talked to friends and family on the phone, and made weekly trips to the grocery store, drug store, and bank. (Tr. 133-135). In short, the record establishes that Plaintiff engaged in significant daily life activities. As to the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (plaintiff performed "wide range of house work" which supported finding of non-disability); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

Similarly, the remainder of the medical record provides substantial evidence supporting the ALJ's decision. Plaintiff argues that the ALJ erred in failing to properly evaluate Dr. Kipnis' opinion. The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).[5] A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

---

[5]As Defendant points out in his brief, Plaintiff cites an earlier standard of review that was overruled in Sullivan, supra, following an adoption of new rules by the Administration. See Document #6 at 19, citing Coffman v. Bowen, 829 F.2d 514, 517-518 (4th Cir. 1987) (treating physician's opinion entitled to "great weight," and can only be rejected if there is persuasive evidence to the contrary in the record); Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984) (same); Millner v. Schweiker, 725 F.2d 243, 245-246 (4th Cir. 1984) (same).

not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

On December 4, 2006, Dr. Kipnis completed a functional capacity statement. (Tr. 358-359). In that assessment, the doctor determined that Plaintiff could occasionally lift five pounds, and sit and stand and/or walk for one to two hours each in an eight-hour day. He stated that she could never climb, balance, kneel, crouch, crawl, stoop, push/pull, or reach. (Tr. 358). Dr. Kipnis also stated that Plaintiff could occasionally manipulate and rarely grip/handle, would need to lie down for two hours in an eight-hour day, would need to take more than two fifteen-minute breaks and a thirty-minute lunch period, and would miss five to ten days of work each month. (Tr. 358-359). The ALJ considered Dr. Kipnis' opinion in his decision, and concluded that the doctor's assessment was too extreme and not consistent with the medical evidence of record. (Tr. 14). In support of his determination, the ALJ noted that Plaintiff did well after the January 2007 surgical repair of her rotator cuff; as of April 2007, she had met her physical therapy goals, and was independent with a home exercise program; and she continued to see Dr. Kipnis every six months only for adjustments to her medication regimen and evaluation of her laboratory results. (Tr. 16). The ALJ added that despite the findings in Dr. Kipnis' assessment, Plaintiff was able to perform her job on the last day she was employed. He also found that she declined to pursue her employer's disability program because it was in her pecuniary interest to continue to work, and applied for Social Security disability benefits only after she received her severance package. (Tr. 16). Moreover, a review of the record

reveals that Dr. Kipnis examined Plaintiff only four times during the relevant period, on May 22, 2006, June 5, 2006, June 23, 2006, and December 4, 2006. (Tr. 233, 235-236, 467). Plaintiff contends that she is unable to perform the constant keyboarding required by her past job. Dr. Kipnis never stated that she was unable to perform constant keyboarding. He noted that her osteoarthritis involved her hands, she had limitations due to her thumbs (Tr. 235), and she was restricted to only occasional manipulative activities.[6] (Tr. 358).

Additionally, a review of the record reveals that Dr. Kipnis' opinion is not consistent with his own findings or the other medical evidence in the record. On June 18, 2007, the doctor's only observation was that while Plaintiff had moderate medial joint line tenderness in both of her knees, there was no effusion, warmth, or erythema. (Tr. 470). Six months later, Dr. Kipnis' determined that although Plaintiff still had bilateral knee pain, it was to a milder degree with no associated joint swelling. (Tr. 471). On June 17, 2008, the doctor found that Plaintiff was able to stand and walk without difficulty or discomfort, had no synovitis in her upper or lower extremities, and her osteoarthritis was stable on her current medication. (Tr. 472). Dr. Kipnis added that while Plaintiff complained of lower back pain, she was not experiencing any severe episodes of pain or joint swelling, and she only had some achiness in her hips, hands, and shoulders. (Tr. 472). In addition, the doctor observed on December 16, 2008, that Plaintiff's right shoulder symptoms had moderately improved after her injection, her McMurray maneuver was negative, and there was no swelling, warmth, or redness in her knees. (Tr. 503).

Dr. Kipnis' assessment is further contradicted by other evidence in the record. On April 10,

---

[6]The Commissioner also noted that Dr. Kipnis did not include any specific limitations to Plaintiff's ability to manipulate in his Fibromyalgia Medical Statement, and he specifically indicated that Plaintiff was not experiencing the sensation of swollen hands. (Tr. 360).

7

2006, Dr. John Gaul found that Plaintiff's condition had improved forty percent, her pain was only intermittent, she had only a little bit of swelling, and she had good strength and stability in her volar FCR tendon. (Tr. 331-332). Dr. Gaul then observed on May 22, 2006 that Plaintiff's pain was currently rated as three out of ten, her range of motion was "pretty good," she was not experiencing any triggering in her fingers, she had forty-two pounds of grip strength bilaterally, and she had been released from physical therapy. (Tr. 322-323). On July 11, 2006, Dr. James B. Jones found that while Plaintiff had some degenerative changes in her extremities, she had only trace edema and no focal neurological findings. (Tr. 258). Dr. Earl J. Epps, Jr. noted at the consultative examination on August 31, 2006, that Plaintiff was in no acute distress, did not require an assistive device for ambulation, and was able to get on and off the examination table and dress herself without assistance. (Tr. 282). Dr. Epps also observed that Plaintiff's muscle strength was rated as five out of five in her upper and lower extremities, her gait was normal, her straight leg raising was negative bilaterally, she experienced no loss of motor, sensory, or coordination function, had normal range of motion in her elbows, wrists, hands, ankles, and feet, had normal dextrous movements with both of her hands, her knee flexion was to one hundred degrees, and her right shoulder x-ray revealed only mild degenerative changes. (Tr. 283, 286). On September 22, 2006, Dr. Gaul determined that Plaintiff's pain was ninety percent better after her January 2006 surgery, she had much less pain in her right hand, and much better use of her thumb. (Tr. 320-321). The following month, Dr. Jones observed that Plaintiff only had mild degenerative changes in her extremities, and her neurological examination was non-focal. (Tr. 416).

Kevin Casey, a physician's assistant ("PA"), found on January 31, 2007 that one and a half weeks after surgery, Plaintiff's pain was down, she had no complaints, was neurovascularly intact

8

with full elbow and wrist range of motion, and tolerated passive range of motion very well. (Tr. 387). On February 15, 2007, Dr. Epps observed that Plaintiff's muscle strength was rated as five out of five in her left upper extremity and right lower extremity and four out of five in her left lower extremity. She had no loss of motor function, could forward elevate and abduct her left shoulder to one hundred forty degrees, had normal dextrous movements of her hands, her knee flexion was to one hundred degrees on the right and ninety degrees on the left, and she had essentially normal range of motion in her elbows, wrists, hands, ankles, and feet. (Tr. 379). On March 22, 2007, Dr. Dale Owen found that Plaintiff's gait and strength were normal, and she had no edema in her extremities. (Tr. 423). On January 16, 2008, Dr. Mary W. Stowe observed that Plaintiff was in no acute distress, her strength was rated as five throughout, and her sensation was intact. (Tr. 447). Dr. Stowe later noted on December 5, 2008, that Plaintiff reported that she had no current acute problems other than her right shoulder issues, which had improved with current management, as her shoulder moved full range. (Tr. 495, 497). Lastly, Dr. Owen found on November 18, 2008 and January 13, 2009, that Plaintiff's strength and gait were normal. (Tr. 510, 512).

Accordingly, the ALJ's determination that Dr. Kipnis' opinion was not entitled to controlling weight was supported by substantial evidence.

Plaintiff's final assignment of error expressly challenges the ALJ's conclusion that she was able to perform all material duties of her office operations specialist position when she was laid off on April 17, 2006. At the outset, the Court notes that the ALJ found that because Plaintiff "retained the ability to perform the exertional demands of a range of sedentary work <u>within 12 months</u> of her alleged onset of disability, she could have returned to her job as an office operations specialist as she performed it." (Tr. 17) (emphasis added). Contrary to Plaintiff's assertion, the ALJ never concluded

9

that Plaintiff's employment between January and March 2006 established that she could perform her past relevant work for disability purposes. (Tr. 16-17).

In determining whether the claimant can return to her past relevant work, the ALJ must compare her RFC to the physical and mental demands of the work that she has done in the past. 20 C.F.R. § 404.1560(b) (2009). In making this decision, the ALJ will also consider whether the claimant retains the RFC to perform the job duties of her particular past relevant work, or whether the claimant's RFC allows her to perform the duties of her past job, as they are performed in the national economy. SSR 82-61. At step four of the sequential evaluation process, however, the burden is on the claimant to establish that she has a physical or mental impairment which precludes her from performing her past relevant work. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In this case, the ALJ found that Plaintiff had the RFC to perform sedentary work, which did not require more than occasional postural activities and reaching. (Tr. 16). The ALJ then compared Plaintiff's RFC to her description of her past work as an office operations specialist. (Tr. 16-17). According to Plaintiff, her past job required sitting five hours a day, standing one hour a day, walking two hours a day, and lifting and carrying less than ten pounds. (Tr. 17, 153). Plaintiff also stated that her job required writing, typing, and handling small objects six hours a day. (Tr. 17, 153). Ultimately, the ALJ determined that Plaintiff retained the ability to perform the exertional demands of a range of sedentary work within twelve months of her alleged onset date of April 17, 2006. Thus she could return to her job as an office operations specialist as she performed the position. (Tr. 17).

The ALJ's opinion clearly reflects that he relied on Plaintiff's hearing testimony, the medical records from her treating physicians, and the consultation examination reports in formulating his RFC determination. (Tr. 11-15). While the ALJ did consider the fact that Plaintiff was employed

up until she was laid off in April 2006 (Tr. 15), that information comprised merely one paragraph amongst the four pages of evidence that he discussed as part of his RFC finding. (Tr. 11-15). Information in the record regarding Plaintiff's employment history is also relevant to the ALJ's RFC determination, as it speaks to the credibility of Plaintiff's allegations. Plaintiff testified that she was aware as of late 2005 that she was going to be laid off from her job. She chose not to take advantage of the company's disability program, and instead returned to work after her trigger release in January 2006, so that she could obtain her severance package. (Tr. 15, 40-41). A claimant's financial motivation may contribute to an adverse credibility determination when other factors cast doubt upon the claimant's credibility. Ramirez v. Barnhart, 292 F.3d 576, 581 n.4 (8th Cir. 2002) (explaining Dodd v. Sullivan, 963 F.3d 171, 172 (8th Cir. 1992)).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's daily activities, and work history and his ultimate determination that Plaintiff was not disabled.

## IV. **RECOMMENDATIONS**

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #5) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #7) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same.  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990).   Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365.   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: February 19, 2010

David S. Cayer
United States Magistrate Judge